[682 NYS2d 146]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JIAN JING HUANG, Appellant.

First Department, December 8, 1998

### APPEARANCES OF COUNSEL

*Morrie I. Kleinbart* of counsel (*Norman Barclay* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Yoav M. Griver* of counsel (*E. Joshua Rosenkranz, Paul Skip Laisure, Richard M. Greenberg* and *Daniel A. Warshawsky* on the brief; *Office of the Appellate Defender,* and *Weil, Gotshal & Manges, L. L. P.,* attorneys), for appellant.

### OPINION OF THE COURT

ROSENBERGER, J.

Defendant Jian Jing Huang (defendant or Huang) and his codefendants Kwak Wing Cheung and Fung Cheng were indicted for the crime of kidnapping in the first degree, after Joe Fong (Fong) was abducted for ransom. On this appeal, defendant challenges the trial court's denial of his motion to suppress evidence derived from a wiretap, where the People admittedly violated the sealing requirements of the eavesdropping statute (CPL 700.65 [3]).

Fong was kidnapped by Huang, Cheung and Cheng on April 21, 1992 and held for ransom because of a dispute over construction work performed by Fong and his father for the kidnappers' friends. The police learned of the kidnapping on April 22 and installed tape-recording equipment at Fong's parents' home, to which Fong made several calls at defendant's direction. Since this "trap-and-trace" device also recorded the phone numbers of incoming calls, the police were able to discover that many of Fong's calls were made from a cellular phone. The police then placed a wiretap on that cellular phone's specific telephone line, so that they could trace the location of the cellular phone (and thus find the place where Fong was being held). By using directional finding equipment to evaluate the signals from the wiretapped phone, the police were able to pinpoint the building in Queens where Fong was held. They raided the location, arrested Huang and his codefendants,

seized the gun and handcuffs used to keep Fong from escaping, and obtained incriminating statements from Huang and Cheung.

After Huang and his cohorts were indicted, the court ruled that Huang and Cheung should be tried separately from Cheng; the three shared a single trial but with separate juries. On March 23, 1993, defendant moved to suppress the intercepted conversations and all evidence derived therefrom. The People conceded that they had failed to comply with the sealing requirements of CPL 700.65 (3) with respect to the cellular phone conversations.

The motion court's order stated that the defendant's motion was "granted to the extent of suppressing all conversations recorded by the police with respect to the [defendant's] target phone," as opposed to the conversations that the victim's parents allowed the police to record on their home phone. This order was made based on the papers submitted. On its face, the order did not distinguish between the substance of the cellular phone conversations and the location evidence derived from them.

Subsequently, at the suppression hearing, defendant learned the role that the inadmissible phone conversations had played in locating him, and further learned that the People's witnesses planned to testify about the existence of these conversations and about how the wiretap was used to lead the police to the defendant's location, notwithstanding the fact that such evidence was statutorily precluded by the motion court's finding that the sealing requirements had been violated.

For this reason, three days after the trial began, defendant asked the trial court to suppress this wiretap evidence as well. The trial court refused to hear arguments because it deemed the motion untimely, and also indicated that it would have denied it on the merits in any event. This motion should have been granted.

As explicitly required by CPL 700.05 (3) and 700.65 (3), when the People violate the sealing requirements, they are barred from offering into evidence not only the substance of the intercepted communications, but also testimony about the conversation's very existence (see, People v Melillo, 112 Misc 2d 1004, 1006), as well as any evidence derived therefrom (People v Winograd, 68 NY2d 383, 395).

On appeal, the People mistakenly claim that defendant waived the right to seek suppression because his initial sup-

pression motion was untimely under CPL 255.20 (1). This statute provides that a motion to suppress based on a violation of the wiretap sealing requirement should be made within 45 days after the defendant is served with the eavesdropping warrant.

However, under CPL 255.20 (3), even after the trial has begun, the trial court must entertain a belated motion if it is "based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised" within the specified time limits of CPL 255.20 (1) and (2). Further, even if these exceptions do not apply, the trial court "in the interest of justice, and for good cause shown, may, in its discretion, at any time before sentence, entertain and dispose of the motion on the merits" (CPL 255.20 [3]). CPL 710.40 (4) contains a similar standard governing applications to renew suppression motions, requiring that the defendant demonstrate "additional pertinent facts * * * which he could not have discovered with reasonable diligence before the determination of the [original] motion".

Here, though defendant's March 23, 1993 motion was made more than 45 days after defendant was served with a copy of the eavesdropping warrant, the motion court entertained it and granted it, which was within its discretionary power under CPL 255.20 (3) (*People v Melillo, supra,* at 1005). It is not argued on this appeal that this motion was untimely in March, and we cannot properly base our decision on that theory. Only defendant's June 17, 1993 attempt to renew the motion before the trial court was, erroneously, deemed untimely, which is the sole factual predicate for the People's untimeliness argument.

Having decided to entertain the March 23 motion despite its untimeliness, and having found that the People violated the sealing requirements, the motion court was bound by the explicit language of CPL 700.65 (3) to suppress both the "contents" of the communication and all "evidence derived therefrom". "Contents" are defined expansively in CPL 700.05 (3) to include "any information concerning the identity of the parties to such communications, and the *existence,* substance, purport, or meaning of that communication." (Emphasis added.) Case law is clear that when wiretap tapes are suppressed because they were not timely sealed, evidence discovered by exploitation of those wiretaps must also be deemed inadmissible (*e.g., People v Weiss,* 48 NY2d 988, 989; *People v De Martino,* 71 AD2d 477, 481, *lv denied* 49 NY2d 892). Thus, the order suppressing the communications themselves neces-

sarily included the suppression of the location evidence derived from the wiretap on defendant's cellular phone.

Contrary to the trial court's views, the June 17, 1993 motion was neither untimely nor meritless. Defendant was not raising a new claim that he should have included in his pretrial motion papers. Rather, having learned that the motion court's suppression order would not be given its proper effect, defendant sought to have the trial court remedy this defect. The June 1993 motion was not a new motion, since by the terms of the wiretap statutes, the relief that he sought was already legally mandated by the initial suppression order.

Whether it is considered a motion to reopen a suppression hearing under CPL 710.40 or a new motion, defendant has shown good cause to entertain it despite any delay (*see, People v Mullen*, 152 AD2d 260, 268). The People's intent to use precluded evidence was not known to him until he learned at the suppression hearing that, even though the People would not introduce the substance of the conversations, a significant portion of their other evidence depended on the existence of the wiretap (*see, People v Stroud*, 63 AD2d 721, 722). If these facts were not developed at the March 1993 hearing, that is not the fault of the defendant, who did not have the information necessary.

Accordingly, the judgment of the Supreme Court, New York County (Budd Goodman, J., on omnibus motion and motion to suppress eavesdropping evidence; Harold Rothwax, J., at suppression hearing, trial and sentence), rendered July 21, 1993, convicting defendant, after a jury trial, of kidnapping in the first degree, and sentencing him to a term of 15 years to life, should be reversed, on the law, the motion to suppress all evidence derived from the wiretapped conversations granted, and a new trial ordered.

MILONAS, J. P., NARDELLI and SAXE, JJ., concur.

Judgment, Supreme Court, New York County, rendered July 21, 1993, reversed, on the law, the motion to suppress all evidence derived from the wiretapped conversations granted, and a new trial ordered.